In the Matter of ALEXANDER D. and Another, Children Alleged to be Neglected. VICTORIA D. et al., Appellants; ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent. [845 NYS2d 244]—

Order, Family Court, New York County (Sara P. Schechter, J.), entered on or about May 10, 2007, which, after a fact-finding hearing, found that respondents medically and educationally neglected the subject children, reversed, on the law and the facts, without costs, the findings of neglect vacated and the petitions dismissed.

Petitioner failed to establish by a preponderance of the evidence that Edward D., a 10-year-old autistic child, was educationally neglected (*see* Family Ct Act § 1012 [f] [i] [A]; § 1046 [b] [i]). Edward's unexcused absence from school "does not, ipso facto, establish either the parental misconduct or the harm or potential harm to the child necessary to a finding of [educational] neglect," where a preponderance of the evidence shows that respondent mother was actively engaged in "securing an appropriate and specific special education placement for the child, and there is no evidence that the child's education was adversely affected by his absence from school" (*Matter of Giancarlo P.*, 306 AD2d 28, 28-29 [2003]; *cf. Matter of Aishia O.*, 284 AD2d 581, 583-584 [2001]). Nor does a preponderance of the evidence show that respondents' decision not to seek medical care after Edward fell down a flight of stairs was medical neglect (Family Ct Act § 1012 [f] [i] [A]), where it appears that respondents adequately attended to injuries that were minor (*see Matter of Hofbauer*, 47 NY2d 648, 655 [1979]), and that

such decision did not impair or threaten to impair Edward's health (*cf. Matter of Faridah W.*, 180 AD2d 451 [1992], *lv denied* 80 NY2d 751 [1992]). The oral report to the Administration for Children's Services (ACS) that precipitated this proceeding and was called in by Edward's teacher, who did not see Edward after the accident but reported that he sustained bruises to his face and could not walk as a result of falling down a flight of stairs, and that respondents were refusing her advice to take Edward to a doctor, was based on her telephone conversation with respondent mother the day after the fall, concerning which the latter credibly testified that she exaggerated Edward's injuries out of fear that ACS would take him away if she told the truth about his absence, i.e., that it was due to another tantrum. The derivative findings of neglect should be vacated since the evidence of neglect as to Edward does not demonstrate "such an impaired level of parental judgment as to create a substantial risk of harm" to the other child in respondents' care (*Matter of Vincent M.*, 193 AD2d 398, 404 [1993]). Concur—Tom, J.P., Saxe, Friedman and Gonzalez, JJ.

McGuire, J., concurs in a separate memorandum as follows: I agree that the findings that respondent parents medically and educationally neglected Edward and derivatively neglected Alexander should be reversed, the findings vacated and the petitions dismissed. I would reverse on the law, however, as I am of the view that the evidence was legally insufficient to support the neglect findings.

As for the medical neglect finding, none of the witnesses who saw Edward after he fell down the stairs provided testimony that would support a finding that he suffered an injury requiring medical attention. To the contrary, the child protective specialist saw a black and blue mark and a scratch on Edward's face and no other evidence of any injury; he did not see Edward limping or observe any cuts on his arms or legs. Similarly, respondent father testified that after the fall, Edward climbed back up the stairs "with no problem." He had only a scratch and did not complain of pain or limp either that day or in the following days. Respondent mother saw only a "pink, like a small ball" on Edward's face, which she treated with an antibacterial medication. To be sure, Family Court heard evidence during the Law Guardian's case from Edward's teacher, Ms. Perez, that the day after Edward fell respondent mother told her that Edward was absent from school because he had fallen, was "black and blue," limping and would not get up. Even assuming that Family Court rationally could have rejected all the other evidence and concluded from the testimony of Ms.

Perez that the fall was other than the kind of minor or "trifling affliction which . . . everyday experience teaches us . . . may be overcome by simple household nursing" (*Matter of Hofbauer*, 47 NY2d 648, 655 [1979]), critical evidence nonetheless was lacking. That is, there was no evidence that "the failure to obtain medical assistance result[ed] in impairment of the child's condition or the imminent danger thereof" (*Matter of Faridah W.*, 180 AD2d 451, 452 [1992], *lv denied* 80 NY2d 751 [1992]).

As for the educational neglect finding, the evidence established that 10-year-old Edward, a child with autism and mild retardation who lived in Manhattan and attended a school in Brooklyn that required him to take a lengthy bus trip, was regularly resistant to attending the school and missed some 14 days of school at the beginning of the 2006-2007 school year. The evidence relating to the difficulties respondents faced in their efforts to get Edward on the bus need not be recounted. Suffice it to say that the evidence was uncontradicted and the difficulties were formidable. But putting that aside, and as the majority recognizes, the 14 days of missed school "does not, ipso facto, establish either the parental misconduct or the harm or potential harm to the child necessary to a finding of [educational] neglect" (*Matter of Giancarlo P.*, 306 AD2d 28, 28 [2003]). I also agree with the majority that "a preponderance of the evidence shows that respondent mother was actively engaged in 'securing an appropriate and specific special education placement for the child, and there is *no evidence* that the child's education was adversely affected by his absence from school' " (quoting *id.* at 28-29 [emphasis added]). The conclusion that there was no such evidence on an essential element of an educational neglect finding is, of course, a conclusion of law.

Because the evidence was legally insufficient to support the findings of neglect of Edward by respondents, it is legally insufficient to support the derivative findings of neglect as to Alexander.