OPINION OF THE COURT
Emily M. Olshansky, J.
In this postdispositional Family Court Act article 10 proceeding, respondent mother has moved to modify the dispositional order previously entered against her on consent and for the entry of a suspended judgment. She has also moved to vacate the initial finding of neglect entered against her on consent pursuant to Family Court Act § 1051. The motions are supported by the Attorney for the Children and opposed by New York City Children’s Services (NYCCS). For the reasons set forth herein the motions are granted.
Procedural History
On June 11, 2008, NYCCS filed petitions against respondent mother alleging that the subject children were neglected children pursuant to Family Court Act § 1012 (f) (i) (b).[1] NYCCS requested and the court granted a removal of the children. Shortly thereafter, Araynah was temporarily released to her nonrespondent father and Amir was placed in kinship foster care with his maternal uncle.
On March 9, 2009, respondent waived her right to a fact-finding hearing and consented to a finding of neglect being *568 entered against her pursuant to Family Court Act § 1051 (a).[2] On the same date, the subject children were temporarily released to her under NYCCS supervision.
On July 16, 2009, respondent waived her right to a dispositional hearing and consented to a dispositional order. That order released the children to respondent under six months’ NYCCS supervision on the condition that she cooperate with announced and unannounced visits, submit to random urine screens, cooperate with drug treatment, ensure that Araynah attend school regularly and on time, complete a parenting skills course, maintain a safe and sanitary home, make appropriate child care arrangements, utilize only child care providers cleared through the New York State Central Register and not leave the children alone with Trevor T.[3]
During the months that followed, respondent complied with the provisions of the dispositional order. She also continued to attend school and search for a job.
By notice of motion dated December 24, 2009, and returnable on January 6, 2010, respondent moved pursuant to Family Court Act § 1052 (a), §§ 1055 and 1061 to modify the dispositional order and suspend judgment effective January 15, 2010. In support of her motion, respondent submitted an affidavit in which she described her compliance with the provisions of the dispositional order and service plan. She asserted that she was attending college and searching for a job. She indicated that she hoped to find a job working for the Board of Education. She asserted that a suspended judgment would greatly increase her chances of obtaining employment by the Board of Education since it would facilitate her efforts to amend her New York State Central Register record. This, she asserted, would be in the children’s best interests since it would enable her “to support [them] more easily and steadily.”
Respondent asserted that her motion should be granted without a hearing. She contended that a hearing was unnecessary because NYCCS did not deny that she had complied with all aspects of her service plan.
*569 NYCCS submitted an affirmation in opposition to respondent’s motion. NYCCS asserted that there were numerous disputed issues that could not be resolved without a hearing. The agency also asserted that by the time that a hearing could be conducted the court would no longer have jurisdiction over respondent or the children. NYCCS further asserted that the facts and circumstances in the instant case did not justify the unusual relief that respondent requested. Finally, NYCCS questioned whether a suspended judgment should be ordered simultaneously with a dismissal at the end of the dispositional period and whether that would be in the children’s best interests given the uncertain nature of respondent’s future job prospects.
The Attorney for the Children submitted no papers in support of or opposition to the motion. Nevertheless, she orally indicated that she supported the motion for a suspended judgment.
By order and decision dated January 12, 2010, respondent’s motion was denied. That decision was based on a number of factors. First, the court concluded that the relief requested by respondent could not be granted without either the consent of the parties or a hearing. Second, because the period of supervision was scheduled to conclude within three days, the hearing could not be concluded until after the dispositional period had expired, supervision had ended and the court no longer had jurisdiction over the family. Third, respondent failed to allege any changed circumstances or other factual basis to support a finding of “good cause” and warrant a new hearing to consider modification of the original dispositional order that had recently been entered on consent. Fourth, the court concluded that the purpose of a suspended judgment — to provide a parent with a second chance and a brief grace period to meaningfully address the problems that led to the original finding during a period of ongoing monitoring and supervision — was best served if it were ordered toward the beginning of the dispositional period, rather than after its conclusion. Finally, the court questioned whether the statutory provisions authorized the entry of a suspended judgment simultaneously with a dismissal after the expiration of the original period of supervision.
Respondent appealed and by decision and order of the Appellate Division, Second Department, dated March 16, 2011, the order denying respondent’s motion was reversed (Matter of Araynnah B. [Moshammet R.], 80 AD3d 608, 609 [2011]). The Appellate Division held that “[u]nder the circumstances of this *570 case, the Family Court should have held a hearing on the mother’s motion pursuant to Family Court Act § 1061 to modify the order of disposition.” The Court took “no position as to whether the mother’s request to modify the dispositional order to an order suspending judgment pursuant to Family Court Act § 1052 (a) (i) should be granted.” Accordingly, the matter was remitted to the undersigned to conduct the hearing.
Thereafter, on July 13, 2011, respondent filed an order to show cause seeking to vacate the original finding of neglect. Respondent asserted that even if the court granted the suspended judgment and dismissed the petition at the end of the suspended judgment period, the finding of neglect would remain unless the court entered an order of dismissal explicitly vacating it. In support of the motion respondent cited Matter of Crystal S. (Elaine S.) (74 AD3d 823 [2010]),[4] which had been decided after the original dispositional order had been entered.
Thereafter, on July 22, 2011, the court conducted a hearing pursuant to Family Court Act § 1061 to determine whether to modify the dispositional order, enter a suspended judgment and/or whether to vacate the finding of neglect. At the hearing, respondent testified on her own behalf and submitted numerous documents into evidence. NYCCS called no witnesses and introduced no documentary evidence.
*571 Respondent testified that she had completed a parenting skills class that she found and paid for on her own. She testified that she submitted to a mental health evaluation and engaged in individual counseling. She also testified that she completed a substance abuse treatment program at Cumberland Diagnostic and Treatment Center and became a peer counselor for young mothers at the program. She further testified that she had submitted to numerous random urine screenings and that her last positive toxicology was in July 2008. Respondent also testified that she had completed 10 anger management classes because she thought it would be helpful although she was not required to do so.
Respondent testified that she had obtained a high school general equivalency diploma. She further testified that, in August 2008, she began attending the Borough of Manhattan Community College to pursue an Associate’s degree in human services and social work. She testified that prior to obtaining her diploma she was forced to take a leave of absence when Amir became ill due to his asthma. She testified that she needed approximately 20 credits in order to obtain her degree. Respondent further testified that she did not have the financial resources to pay for school and that she has been unable to obtain employment as a teaching assistant because of the finding of neglect that was entered against her.
Respondent testified that both children were doing very well. She testified that Araynah was attending a charter school and that she had an overall “B” average but that she had an “A” average in science. Respondent testified that Amir was attending public school and that he was also doing well academically. She further testified that she had ensured that both children had been attending school regularly and on time. Respondent further testified that she had served as the vice-president of the Parent Teacher Association (PTA) at Amir’s school and had also volunteered on school trips, in classrooms and in the school cafeteria.
In addition, respondent introduced the following documents into evidence: Araynah’s report card for the 2010-2011 school year (respondent’s exhibit No. 1 in evidence); Araynah’s honor student certificate for the third quarter of the 2010-2011 school year (respondent’s exhibit No. 2 in evidence); Amir’s science award dated June 22, 2011 (respondent’s exhibit No. 3 in evidence); respondent’s award for the completion of the alcoholism treatment program at Cumberland Diagnostic and Treatment *572 Center dated January 23, 2009 (respondent’s exhibit No. 4 in evidence); respondent’s certificate of completion for the parenting skills program from the American Family Community Services, Inc., dated January 9, 2010 (respondent’s exhibit No. 5 in evidence); a letter from the principal of one of the children’s schools dated June 29, 2011 regarding respondent’s volunteer work with the school and the Parent Teacher Association (respondent’s exhibit No. 6 in evidence).
NYCCS failed to present any testimony or documentary evidence. During summation, counsel asserted that the relief requested by respondent should be denied and that the finding of neglect should not be vacated, given that the underlying allegations were of “such a serious nature.”
Legal Analysis
1. Modification of the Dispositional Order to Grant a Suspended Judgment
Article 10 of the Family Court Act was enacted “to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being” (Commissioner of Social Servs. [Maria M.], 161 Misc 2d 600, 607 [Fam Ct, Kings County 1994]). The statutory scheme is intended to be remedial, “not punitive in nature” (Matter of Diane P., 110 AD2d 354, 358 [2d Dept 1985]). That purpose is subverted when it is used to punish parents in the name of child protection (Matter of Jessica C., 132 Misc 2d 596 [Fam Ct, Queens County 1986]; Matter of Linda S., 148 Misc 2d 169 [Fam Ct, Westchester County 1990]; Matter of Theresa C., 121 Misc 2d 15 [Fam Ct, Monroe County 1983]).
Consistent with that purpose Family Court Act § 1061 was enacted granting the Family Court extremely broad authority to “stay execution, of arrest, set aside, modify or vacate any order issued in the course of a proceeding under this article” including a prior fact-finding or dispositional order based on “good cause shown and after due notice” (Matter of Araynnah B. [Moshammet R.], 80 AD3d 608 [2011]; Matter of Angelina AA., 222 AD2d 967, 969 [3d Dept 1995]; Matter of Kenneth QQ. [Jodi QQ.], 77 AD3d 1223 [3d Dept 2010]; Matter of Carrie F. v David PP., 34 AD3d 1108 [3d Dept 2006]).
Family Court Act § 1061 “expresses the strong Legislative policy in favor of continuing Family Court jurisdiction over the children] and family so that the court can do what is necessary in the furtherance of the child[ren]’s welfare” (Matter of Ange *573 lina AA., 222 AD2d at 968-969, quoting Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1061, at 461; Matter of Shinice H., 194 AD2d 444 [1st Dept 1993]). Giving the Family Court the authority to modify any order issued in the course of a child protective proceeding, upon a showing of good cause, promotes the best interests of children (Matter of Chendo O., 193 AD2d 1083, 1084 [4th Dept 1993]).
A dispositional order can be modified upon a showing of “good cause” as long as it “reflect[s] a resolution consistent with the best interests of the children after consideration of all relevant facts and circumstances, and [is] supported by a sound and substantial basis in the record” (Matter of Kenneth QQ. [Jodi QQJ, 77 AD3d 1223, 1224 [2010], quoting Matter of Elijah Q., 36 AD3d 974, 976 [3d Dept 2007], lv denied 8 NY3d 809 [2007]). In modifying a dispositional order, the court has the discretion to adopt one or more of the options outlined in Family Court Act §§ 1052 and 1055-b. Accordingly, the court may suspend judgment, release the children to a parent, place a parent or other person under supervision, place the children in foster care, enter an order of protection, place the children in the custody of a relative or other suitable person or enter an order of guardianship. The statute prohibits the court from entering an order that combines placement of the children with a suspended judgment or a release to a parent. The statute also prohibits combining an order of custody with any other dispositional alternative and it provides that upon the entry of an order of guardianship, the court’s jurisdiction over a respondent terminates.
A suspended judgment is considered the least restrictive dispositional alternative. Family Court Act § 1053 provides that the rules of court shall define the permissible terms and conditions of a suspended judgment. The rules require that the terms of such a judgment relate to the adjudicated acts or omissions of respondent and contain at least one of the enumerated terms.[5] Like other dispositional orders, a suspended judgment lists all *574 services that respondent must complete in order to correct the problems that led to the filing of the petition. The maximum duration of a suspended judgment is one year, unless the court finds that exceptional circumstances require an extension for an additional year. The statute also provides that the court may require NYCCS to report periodically on the implementation of the suspended judgment.
When a suspended judgment is imposed the Family Court retains jurisdiction to consider a motion to enforce, modify, or vacate it at any time, upon a proper factual showing of compliance or noncompliance with its terms and conditions (Matter of Jonathan B., 5 AD3d 477 [2d Dept 2004], lv dismissed 2 NY3d 791 [2004] [where a suspended judgment is silent as to the legal consequences of the expiration of the period of suspension the Family Court retains jurisdiction to consider a motion to enforce, modify, or vacate it at any time, upon a showing of compliance or noncompliance with its terms and conditions]; Matter of MN, 16 Misc 3d 499 [Fam Ct, Monroe County 2007]; Besharov, Practice Commentaries, Family Ct Act § 1053; see also State of New Jersey Div. of Youth & Family Servs. v C.R., 387 NJ Super 363, 374-375, 903 A2d 1129, 1135-1136 [Ch Div 2006], overruled on other grounds by New Jersey Div. of Youth & Family Servs. v R.M., 411 NJ Super 467, 986 A2d 749 [App Div 2010], cert denied 203 NJ 439, 3 A3d 1228 [2010] [a suspended judgment allows rehabilitative or supervisory services in lieu of a permanent adjudication of abuse or neglect when services can reasonably be expected to deter future maltreatment]).
Although the Family Court Act has included a suspended judgment as a permissible dispositional alternative since at least 1970, such judgments are not often granted. The statute and the rules of court are silent about what factors the court is to consider in determining whether to grant a suspended judg *575 ment or the consequences of successfully completing the suspended judgment period. Nor are there any reported Appellate Division or Court of Appeals cases providing precise guidance. Although the appellate courts have repeatedly considered the consequences where a respondent fails to cooperate with the terms and conditions of a suspended judgment in termination of parental rights cases, there has been no discussion about the precise issue presented here.
Nevertheless, the purpose of a dispositional hearing is to determine which statutory alternative is in the best interests of the children and a review of the limited existing case law establishes that this issue should be evaluated in light of the following factors: (1) respondent’s prior child protective history; (2) the seriousness of the offense; (3) respondent’s remorse and acknowledgment of the abusive/neglectful nature of his or her act; and (4) respondent’s amenability to correction, including compliance with court-ordered services and treatment (Matter of MN, 16 Misc 3d at 504 [a suspended judgment was entered where the father had no prior child protective history, he acknowledged his role in his wife’s abuse which led to one child being permanently injured, he had taken steps to correct his neglectful actions and he had successfully completed all services]; Matter of Makynli N., 17 Misc 3d 1127[A], 2007 NY Slip Op 52162[U] [Fam Ct, Monroe County 2007] [respondent was granted vacatur of the neglect finding and dismissal of the petition where he had successfully complied with all of the terms and conditions of the suspended judgment, it was in the children’s best interests to vacate the finding and the aid of the court was no longer required], citing State of New Jersey Div. of Youth & Family Servs. v C.R., 387 NJ Super 363, 374, 903 A2d 1129, 1135 [2006] [the factors that should be considered in determining whether to order a suspended judgment are respondent’s prior child protective history, the seriousness of the original misconduct, respondent’s remorse and acknowledgment of the abusive/neglectful nature of his or her act and respondent’s amenability to correction, including compliance with court-ordered services and treatment]; see also New Jersey Div. of Youth & Family Servs. v I.H., 2010 WL 4642986, *5-6, 2010 NJ Super Unpub LEXIS 2791, *14-15 [App Div 2010]; New Jersey Div. of Youth & Family Servs. v C.S., 2010 WL 4449733, 2010 NJ Super Unpub LEXIS 2703 [App Div 2010]; New Jersey Div. of Youth & Family Servs. v R.R., 2008 WL 4202861, 2008 NJ Super Unpub LEXIS 105 [App Div 2008]; *576 New Jersey Div. of Youth & Family Servs. v C.P., 2008 WL 731835, *11, 2008 NJ Super Unpub LEXIS 1129, *29-30 [App Div 2008], cert denied 196 NJ 347, 953 A2d 765 [2008]).
Each of these factors is considered separately below.
Respondent’s Prior Child Protective History
The first factor is respondent’s prior history of child maltreatment. In the instant case, respondent has no prior findings of child abuse or neglect. Additionally, according to reports previously submitted by NYCCS respondent has had no prior reports of suspected child maltreatment made against her.
The Seriousness of the Offense
The second factor is the “seriousness” of the underlying acts of misconduct. It goes without saying that any case involving allegations of child abuse or neglect is a “serious case.” Nevertheless, “seriousness” exists along a continuum and the courts have considered the magnitude of the underlying misconduct in determining numerous issues in child protective proceedings. For example, the nature and duration of the underlying misconduct has been considered in evaluating allegations of derivative neglect, e.g., whether a parent continues to present a risk of harm to other children in the home. In this context, the courts have considered physical and sexual abuse, as well as repeated acts of excessive corporal punishment to be the most “serious” cases (see e.g. Matter of Christopher W., 299 AD2d 268 [1st Dept 2002] [the nature and severity of the direct abuse, involving a bathtub scalding of a child resulting in death, warranted a finding of derivative abuse although there was no evidence of any direct harm to the other children]; Matter of Jorge S., 211 AD2d 513 [1st Dept 1995], lv denied 85 NY2d 810 [1995] [an unexplained fracture sustained by one child supported a finding of derivative neglect as to other children in the home]; Matter of Christina Maria C., 89 AD2d 855 [2d Dept 1982] [one year old was found to be derivatively neglected based upon the physical abuse of the child’s seven-year-old half brother]; Matter of Rasheda S., 183 AD2d 770 [2d Dept 1992] [the sexual abuse of a stepdaughter supported a derivative finding of neglect as to an 11-year-old daughter since the direct abuse demonstrated a fundamental defect in respondent’s understanding of the duties of parenthood]; Matter of Dutchess County Dept. of Social Servs. v Douglas E., 191 AD2d 694 [2d Dept 1993] [direct evidence is not necessary to sustain a derivative neglect finding as to respondent’s son where he admitted that he repeatedly sexually abused his 10-year-old daughter]; Matter of Amanda LL., 195 *577 AD2d 708, 710 [3d Dept 1993] [the nature of the abuse and that it was perpetrated while another child was in the same room demonstrated a total lack of understanding of the parental role, which created a substantial risk of physical injury likely to cause protracted impairment of the non-target child’s physical and emotional health, thus supporting a finding of derivative abuse]; Matter of Joshua R., 47 AD3d 465 [1st Dept 2008], lv denied 11 NY3d 703 [2008] [findings of derivative neglect entered where respondent shoved food into the mouth of a child who refused to eat and then slapped him in the face, causing vomiting, a bloody nose and bruised eye]; Matter of Eli G., 189 AD2d 764 [2d Dept 1993] [respondent’s beating of his son with an electrical cord resulting in bruises and lacerations was sufficient to establish derivative abuse where the beating was not an isolated incident but a pattern of discipline that the respondent felt was justified]; Matter of Pierre M., 239 AD2d 262 [1st Dept 1997] [evidence establishing that respondent hit her 15-year-old daughter in the head with a wooden table leg and caused lacerations requiring stitches supported a derivative finding]; Matter of Dareth O., 304 AD2d 667 [2d Dept 2003]).
The courts have also considered the nature and relative severity of the underlying acts of abuse or neglect when evaluating motions to dismiss based on assertions that the aid of the court is no longer required under Family Court Act § 1051 (c) (see e.g. Matter of Eustace B. [Shondella M.], 76 AD3d 428 [1st Dept 2010] [where the underlying incident involving domestic violence was an isolated one, the neglect petition should have been dismissed because the court’s aid was not necessary since the release of the child to respondent’s custody effectively determined that there was no basis for supervision or for respondent’s participation in services and the child was otherwise well cared for and wished to remain with respondent]; Matter of Christine M., 157 Misc 2d 4 [Fam Ct, Kings County 1992] [where the neglect was based on the parent’s refusal to have the children inoculated for religious reasons and where the measles outbreak had subsided during the pendency of the proceeding, the court dismissed the petition finding that its aid was no longer required since the parents had otherwise taken appropriate care of the children]; Matter of Hickey, 124 Misc 2d 667 [Fam Ct, Suffolk County 1984] [in an educational neglect case the petition was dismissed pursuant to Family Ct Act § 1051 (c) where the child had attained the age beyond compulsory education during the pendency of the proceeding]; *578 see also Matter of MN, 16 Misc 3d at 504; Matter of Makynli N., 17 Misc 3d 1127[A], 2007 NY Slip Op 52162[U] [2007]; Matter of Elwell, 55 Misc 2d 497 [Fam Ct, Dutchess County 1967] [after finding that the children were neglected based on respondents’ failure to immunize them, which resulted in the public school’s refusal to admit them, the court entered a suspended judgment for 30 days on condition that respondents obtain immunizations because once the children received their immunizations they would be able to go to school and would no longer be neglected]).
Having considered the prior case law addressing the magnitude of the underlying misconduct in other contexts during child protective proceedings, the court finds that the issue is sufficiently similar to apply that case law to the issue presented here. Viewing the standards established in those cases in light of the facts at bar, the court concludes that the nature and duration of the underlying neglect are not of sufficient magnitude to defeat respondent’s motion. In this case, the underlying allegations involved educational neglect, leaving the children home without adult supervision and the prior use of marijuana. Respondent has acknowledged her actions placed the children at risk of impairment; however, there has been no showing that her actions resulted in any actual physical, mental or emotional harm to either one of them.
Moreover, although NYCCS insists that the “seriousness” of the underlying allegations requires that the motion for a suspended judgment be denied, they have cited no case or statutory authority in support of that proposition; nor have they articulated which allegations they consider the most serious or the factors they considered in evaluating the relative seriousness of the underlying acts of misconduct.
Finally, although NYCCS insisted that there were numerous disputed issues of fact that could only be resolved at a hearing, during the hearing they failed to present any evidence whatsoever. Additionally, the documentation they previously submitted fails to support the claim that respondent’s actions were especially serious. In terms of respondent’s prior substance abuse, NYCCS has repeatedly reported that she has tested negative for drugs each and every time she was randomly tested since July 2008. In terms of leaving the children home alone, according to prior reports from NYCCS, respondent left the children alone on one occasion for approximately two hours while she went down the block. In terms of the educational neglect, NYCCS of *579 fered no evidence to establish that respondent failed to exercise reasonable care and that as a result Araynah suffered any harm to her physical, mental or emotional condition. Nor are the allegations contained in the petition necessarily of sufficient magnitude to support an inference of harm since the allegations refer only to absences and lateness during the course of one school year.[6]
Respondent’s Remorse and Acknowledgment of the Neglectful Nature of Her Acts
The third factor is the parent’s remorse and acknowledgment of the neglectful nature of her actions (Matter of Amber D.C. [Angelica C.], 79 AD3d 865 [2d Dept 2010] [a suspended judgment was not appropriate in light of the parents’ lack of insight into the severity of the child’s problems and their failure to acknowledge and address the primary issue which led to the removal in the first instance]; Matter of Amy B., 37 AD3d 600 [2d Dept 2007], lv denied 9 NY3d 808 [2007] [a suspended judgment was not appropriate in light of respondents’ lack of insight into the severity of their problems and their failure to acknowledge and address the primary issue which led to the children’s removal in the first instance]; Matter of Zechariah J. [Valrick J.], 84 AD3d 1087 [2d Dept 2011] [a suspended judgment was not appropriate in light of the father’s lack of insight into his problems and his failure to acknowledge and address the primary issues which led to the child’s removal in the first instance]; Matter of Juan A. [Nhaima D.R.], 72 AD3d 542 [1st Dept 2010] [the mother’s request for a suspended judgment was properly denied in light of her testimony that her drug use *580 never threatened the child’s safety which demonstrated her continued failure to appreciate the gravity of her shortcomings]; Matter of Susan C., 299 AD2d 943 [4th Dept 2002] [Family Court did not abuse its discretion in declining to enter a suspended judgment where the record established that respondent was not likely to change her behavior]).
In this case, the respondent acknowledged her role and willingly and expeditiously took steps designed to overcome the problems that led to the filing of the petitions including the successful completion of all services offered to her. Additionally, respondent waived her right to a fact-finding hearing and allocuted to a finding pursuant to Family Court Act § 1051 (a). She also waived her right to a dispositional hearing and the dispositional order was entered on consent. Further, respondent actively planned for her future with the children by attending college and continuing to seek employment. This has allowed her to serve as a more positive role model. It has also opened the door to new employment opportunities which could enhance her ability to provide for the children’s material and other needs.
Respondent’s Compliance with Court-Ordered Services and Treatment and Efforts Toward Rehabilitation
The fourth factor is respondent’s compliance with court-ordered services (Matter of Zachary CC., 301 AD2d 714 [3d Dept 2003] [the child’s interest warranted a suspended judgment where the mother worked to address the underlying problems by utilizing parent aide services, participating in counseling, as well as drug and alcohol treatment and visitation was going well]; Matter of Ganesha B. [Nyesha H.], 78 AD3d 500 [1st Dept 2010] [in view of respondent’s prolonged failure to comply with the service plan, her belated assurance that she was ready to do so was insufficient to warrant a suspended judgment]; Matter of Michael C., 82 AD3d 1651 [4th Dept 2011], lv denied 17 NY3d 704 [2011] [Family Court did not abuse its discretion in refusing to enter a suspended judgment although the father completed an inpatient substance abuse program where he subsequently failed drug tests and was continuously noncompliant with court-ordered interventions]; Matter of Elijah D. [Allison D.], 74 AD3d 1846 [4th Dept 2010] [Family Court did not abuse its discretion in refusing to enter a suspended judgment even though the mother made progress in completing the recommended programs where her progress was slow and she failed to timely complete the necessary requirements]; Matter of Tiara *581 B. [Torrence B.], 70 AD3d 1307, 1308 [4th Dept 2010], lv denied 14 NY3d 709 [2010] [although the father completed an inpatient substance abuse program he subsequently failed drug tests, was continuously noncompliant with court-ordered interventions and suffered frequent relapses; therefore, a suspended judgment would not serve the best interests of the child]; Matter of Shania D. [Peggy E.], 82 AD3d 1513 [3d Dept 2011] [a suspended judgment was not in the best interests of the children although respondent successfully participated in a number of recommended programs, where she refused to recognize the risks to the children by her continued relationship with an abusive boyfriend and the threat presented if he were allowed to reside with them]; Matter of O, 29 Misc 3d 1233[A], 2010 NY Slip Op 52133[U] [Fam Ct, Queens County 2010] [the court denied respondent’s motion to vacate the findings of neglect and dismiss the petitions where respondent had only recently complied with the terms of the suspended judgment after having repeatedly relapsed over the course of three years during which time she used cocaine and opiates, failed to attend her program, failed to submit to testing and she left the children home alone for days at a time resulting in their being repeatedly removed and returned]).
In the instant case it is undisputed that respondent fully complied with all of the terms and conditions of the original dispositional order in a timely manner. NYCCS never filed a violation petition nor sought an extension of that order. NYCCS offered no evidence to rebut respondent’s testimony that she had participated in and completed all recommended programs and services. NYCCS did not deny that respondent also engaged in additional programs voluntarily. In fact, although NYCCS insisted that a hearing was necessary since respondent’s motions involved numerous contested issues of fact, they failed to offer even a shred of evidence in support of that claim.
Additionally, the evidence establishes that respondent stopped using marijuana immediately after the filing of the petition. She completed a parenting skills course, which she found and paid for on her own. She completed a drug treatment program, submitted to random urine screenings and tested negative each and every time. She submitted to a mental health evaluation, engaged in individual counseling and voluntarily attended anger management classes. She volunteered at her children’s schools and actively pursued her own education with the hope of obtaining employment with the Board of Education. She ensured that *582 her children attended school regularly and that they excelled. As Araynah’s report card indicated she has made enormous progress. She has excelled in science and maintained an overall “B” average. She enrolled Amir in public school where he also did well academically. In addition, respondent became actively involved in the children’s schools. She served as the vice-president of the PTA at Amir’s school and she also volunteered on school trips, in the classroom and in the school cafeteria.
Further, respondent fully cooperated with NYCCS supervision. There was never even an allegation — let alone evidence establishing — that respondent violated any provision of any court order or failed to cooperate with any aspect of the service plan.
In other words respondent successfully overcame the problems that led to the original filing of the petition. Having considered respondent’s prior history, the seriousness of the underlying neglect, the acknowledgment of the neglectful nature of her actions and her compliance with court-ordered services and treatment, the evidence establishes good cause to modify the prior dispositional order. In addition, as respondent and the Attorney for the Children have asserted suspending judgment will serve the children’s interests since it may enable respondent to work and to qualify for better paying and more gratifying employment. This would be in the best interests of the children since it would enable respondent to provide the children with a more positive role model and to provide them with numerous material advantages. In addition, respondent asserts that the stigma created by the findings would affect her in future legal matters. She also asserts that since she successfully addressed the problems that led to the initial finding the public interest in preserving the findings no longer exists.
The purpose of a suspended judgment is to provide a parent with a second chance where the court determines it is in the children’s best interests. It allows a parent a brief grace period to meaningfully address the problems that led to the underlying finding of abuse or neglect. In this case, respondent has meaningfully addressed and overcome the problems that led to the original finding. Her children are thriving in her care.
NYCCS disagrees insisting that respondent’s claims are speculative and based on numerous unchallenged assumptions. In addition, NYCCS contends that all of the parties’ interests would be best served by denying the motion and allowing the finding to remain as it is. Nevertheless, when specifically asked *583 how this result would serve the children’s interests, NYCCS had no answer.
NYCCS emphasizes that even if a suspended judgment were entered and the neglect petitions were dismissed, this would not remove respondent’s name from the New York State Central Register and, therefore, could still bar her from certain future employment opportunities. In this regard NYCCS is correct. Respondent may fail when she attempts to challenge the report that has been indicated against her. Respondent may never complete college. She may never get the job she wants. Nevertheless, dismissal of the neglect petition would at least allow her the opportunity to seek expungement of the report — an option unavailable if the finding remains (see McReynolds v City of New York, 18 AD3d 316 [1st Dept 2005], lv denied 5 NY3d 707 [2005], cert dismissed 546 US 1027 [2005] [a neglect finding in Family Court bars respondent from seeking expungement]; Social Services Law § 422 [8] [b] [ii]).
2. Motion to Dismiss and Vacate the Finding
Where a respondent fully complies with the terms and conditions of a suspended judgment the petition can be dismissed and the finding vacated at the conclusion of the suspended judgment period if that result is in the children’s best interests (Matter of MN, 16 Misc 3d 499 [2007]; Matter of Makynli N., 17 Misc 3d 1127[A], 2007 NY Slip Op 52162[U] [2007] [respondent was entitled to vacatur of the neglect finding and dismissal of the petition where he had successfully complied with all of the terms and conditions of the suspended judgment, it was in the children’s best interests to vacate the finding and the aid of the court was no longer required]; Matter of Jonathan B., 5 AD3d at 479 [a suspended judgment provides the Family Court with continuing jurisdiction to consider a motion by a party to enforce, modify, or vacate it at any time, upon a proper factual showing of compliance or noncompliance with its terms and conditions]; see also Matter of Crystal S. [Elaine S.], 74 AD3d 823 [2010]; Matter of Amelia W. [Gloria D.W.], 77 AD3d 841 [2d Dept 2010]; Matter of De’Von S., 19 Misc 3d 745, 746 [Fam Ct, Monroe County 2008]).
Family Court Act § 1061 explicitly grants the court the authority to vacate any order issued in the course of an article 10 proceeding based on good cause shown where it is in the best interests of the children to do so (Matter of Saboor C., 303 AD2d 1022 [4th Dept 2003]; see also Matter of Nicole Lee B., 256 AD2d 1103 [4th Dept 1998]). A suspended judgment offers unique *584 relief only available in rare cases. What is unique about it is the opportunity it affords a respondent who has fully complied with its terms to move to have the petition itself dismissed and the neglect finding vacated (.Matter of Makynli N., 17 Misc 3d 1127[A], 2007 NY Slip Op 52162[U] [2007]). Since the adjudication of neglect constitutes a permanent and significant stigma, which might affect respondent’s status in future proceedings (Matter of Daniel W., 56 AD3d 483 [2d Dept 2008]; Matter of Crystal S. [Elaine S.], 74 AD3d 823 [2010]), as well as job opportunities, this is a significant difference. Without that opportunity, a suspended judgment is indistinguishable from the other dispositional alternatives outlined in the statute (Family Ct Act § 1052), which encompass the identical relief already granted here, including releasing the children to respondent (Family Ct Act § 1054), placing respondent under supervision (Family Ct Act § 1057) and directing that respondent complete specified services in order to overcome the problems that led to the filing of the initial petition.[7]
In the instant case, it is undisputed that respondent fully complied with the terms of the dispositional order. There was never a request to extend supervision. There was never an allegation — let alone competent proof — that she failed to comply in any respect. There is no need for the aid of NYCCS or this court. Granting a suspended judgment, dismissing the petition and vacating the finding would be in the best interests of the children.
Accordingly, it is hereby ordered, that respondent’s motion to modify the dispositional order is granted and a suspended judgment is entered; and it is further ordered, that respondent’s motion to dismiss the petitions is granted since she has successfully completed the terms and conditions of the suspended judg *585 ment as well as the period of the suspended judgment; and it is further ordered, that respondent’s motion to vacate the finding of neglect and dispositional order is granted in the best interests of the children.

. The petitions alleged that respondent mother failed to provide the children with proper supervision and guardianship. Specifically, the petitions alleged that the children were found home alone. The petitions also alleged that the home was dirty and that there was garbage on the floor. The petitions further alleged that there was inadequate food and no sheets on the children’s beds. It was also alleged that respondent misused marijuana, that she had been smoking two “blunts” every day for three months and that she was not in a drug treatment program. In addition, the petitions alleged that respondent failed to provide an adequate education for Araynah who was absent 40 times and late 61 times during the last school year.

. Family Court Act § 1051 (a) provides, in relevant part, that if all parties and the attorney for the child consent, the court shall enter an order finding that the child is an abused child or a neglected child and shall state the grounds for the finding.

. Mr. T. was respondent mother’s paramour. He was arrested on July 3, 2009 and pleaded guilty to criminal possession of marijuana in the fifth degree. He was sentenced to a conditional discharge for a period of one year, two days of community service and a license suspension for six months.

. In that case the Family Court made a finding of neglect against a respondent mother. The subject child and the mother’s boyfriend had engaged in a physical altercation and the mother had intervened. In so doing she came between her boyfriend and the child and held the child’s arms to prevent her from reaching for a knife, which the mother admitted might have caused swelling and a scratch on the child’s arm. At the conclusion of the hearing, the Family Court found that the child was “out of control” and “consistently disobeyed the rules of the home set down by the mother” (id. at 824). Nevertheless, based upon the mother’s admission that she held the child “very hard,” resulting in an injury to the child’s arm, the Family Court found that the mother failed to provide adequate care and guardianship and that she had neglected her daughter (id.). The Family Court suspended judgment for 12 months and directed the mother to cooperate with monthly NYCCS supervision and to participate in family therapy with the child. At the end of the 12-month period the court dismissed the neglect petition against the mother with prejudice. The Appellate Division, Second Department reversed and vacated the finding of neglect. The Court found that the mother’s use of physical force had been justified to stop the child from escalating the altercation and grabbing a knife. In reaching that determination the Appellate Division rejected the assertion that the appeal had been rendered moot since the petition had been dismissed. The Court noted that although the Family Court dismissed the petition at the end of the suspended judgment period, the finding of neglect remained since the order of dismissal failed to explicitly vacate it.

. 22 NYCRR 205.83 provides that a suspended judgment must direct a respondent to do one or more of the following:
“(1) refrain from or eliminate specified acts or conditions found at the fact-finding hearing to constitute or to have caused neglect or abuse;
“(2) provide adequate and proper food, housing, clothing, medical care, and for the other needs of the child;
*574 “(3) provide proper care and supervision to the child and cooperate in obtaining, accepting or allowing medical or psychiatric diagnosis or treatment, alcoholism or drug abuse treatment, counseling or child guidance services for the child;
“(4) take proper steps to insure the child’s regular attendance at school; and
“(5) cooperate in obtaining and accepting medical treatment, psychiatric diagnosis and treatment, alcoholism or drug abuse treatment, employment or counseling services, or child guidance, and permit a child protective agency to obtain information from any person or agency from whom the respondent or the child is receiving or was directed to receive treatment or counseling.”

. To establish educational neglect NYCCS must establish a “significant, unexcused absentee rate that has a detrimental effect on the child’s education” (Matter of Ember R., 285 AD2d 757, 758 [3d Dept 2001], lv denied 97 NY2d 604 [2001]). It is only where the number of absences is extreme and the absenteeism continues for an extended time without appropriate action by the parent that the court may draw an inference of impairment (Matter of Regina HH. [Lenore HH.], 79 AD3d 1205,1205 [3d Dept 2010]; see Matter of Benjamin K., 28 AD3d 810, 812 [3d Dept 2006]; Matter of Alexander D., 45 AD3d 264 [1st Dept 2007]; Matter of Jennifer N., 173 AD2d 971 [3d Dept 1991]; Commissioner of Social Servs. [Maria M.], 161 Misc 2d 600 [1994]). Additionally, NYCCS must establish that the parent failed to exercise a minimum degree of care in ensuring that the child attended school and that the child suffered impairment or imminent danger of impairment as a result (Matter of Natiello v Carrion, 73 AD3d 1070 [2d Dept 2010] [the evidence did not support a finding that the mother educationally neglected her son where petitioner failed to demonstrate how many of the child’s school absences were actually attributable to the mother, how many of those absences were unexcused or that the child’s education was adversely affected by the mother’s actions]).

. The only other practical difference between a suspended judgment and an order of supervision is the penalty for failing to cooperate. A violation of an order of supervision may be punished by a term of incarceration while the violation of a suspended judgment may result in the issuance of a new order of disposition and a change in custody of the child (see e.g. Matter of Elizabeth T., 299 AD2d 748 [3d Dept 2002] [respondent was properly sentenced to six months in jail for failing to adhere to the obligations required by a court order under Family Ct Act § 1054, after the violations were proved by clear and convincing evidence]; Matter of Linda FF., 301 AD2d 887 [3d Dept 2003] [violation of an order of supervision issued pursuant to Family Ct Act § 1057 is punishable by commitment to jail]; Matter of Rachel A., 278 AD2d 528 [3d Dept 2000] [sufficient evidence supported finding that respondent did not cooperate with certain conditions of order of supervision resulting in additional order of supervision and a suspended sentence of 90 days in jail]).