■ In the Matter of ELIJAH Q. and Others, Children Alleged to be Neglected. LARRY KUDRLE, as Law Guardian, Respondent; WENDY Q., Appellant. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES et al., Respondents. [828 NYS2d 607]—

Carpinello, J. Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered February 17, 2006, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's children to be neglected.

Respondent is the mother of four children, Shameka (born in 1995), Kayla (born in 1997), Elijah (born in 1998) and Isaac (born in 2002). The three oldest children have been seeing a therapist for mental health issues. In particular, Shameka and Kayla suffer from depression while Elijah has been diagnosed with conduct disorder with infancy onset (which his therapist characterized as a "severe diagnosis"), depression and anxiety. Elijah has twice attempted suicide (in November 2004 and May 2005). In addition to these mental health issues, Shameka suffers from a heart condition and Kayla suffers from asthma. Respondent herself has been undergoing mental health treatment and suffers from bipolar disorder.

The instant neglect proceeding was filed by the children's Law Guardian (hereinafter petitioner) in early November 2005.* The petition alleges numerous acts and omissions on the part of respondent during the fall of 2005 pertaining to her care of the children, including her repeated failure to ensure that Elijah attended his weekly mental health appointments and her refusal to address her own mental health issues. The petition also alleges that respondent permitted a man she did not know to move into her home and that her youngest child fell out of a second story window while in her care. Notwithstanding these allegations, petitioner was not specifically seeking removal of the children from respondent's residence in his petition; rather, he was seeking an order of supervision requiring her to accept preventive services. The Clinton County Department of Social Services and the children's father (who has visitation with the children one day per week) appeared in the matter as interested parties. On December 20, 2005, respondent consented to a finding that she had neglected all four children with the express understanding that no agreement had been reached regarding the ultimate disposition in the matter. Following that hearing, Family Court found that the children's best interests warranted placement with the Department for one year. Respondent now appeals.

Respondent first attempts to challenge the underlying finding of neglect against her. The fact-finding order of neglect with respect to all four children, however, was entered on her consent. Thus, she is not an aggrieved party insofar as the finding of neglect is concerned and we cannot consider this argument (*see Matter of Amber VV.*, 22 AD3d 967, 968 [2005], *lv denied* 6 NY3d 708 [2006]; *Matter of Justin L.*, 258 AD2d 934, 935 [1999]; *Matter of Lockett S. v Onya S.*, 247 AD2d 622 [1998]; *Matter of Cherilyn P.*, 192 AD2d 1084 [1993], *lv denied* 82 NY2d 652 [1993]).

Respondent next argues that Family Court's decision to remove the children from her custody was against their best interests. In support of this contention, she points to evidence demonstrating that, with the onset of preventive services, her conduct greatly improved in the 11-week period preceding the final day of the dispositional hearing. She further points out that, while the children's father argued that removal of the chil-

---

* In the course of an earlier custody proceeding between respondent and the children's father, Family Court was concerned about the children's mental and emotional conditions and therefore authorized petitioner to file a neglect or abuse petition if he saw fit (*Matter of Wendy Q. v Richard Q.*, 36 AD3d 1000 [2007] [decided herewith]).

dren from her care was a proper disposition, neither petitioner nor the Department advanced this position. As noted by this Court, "[t]he dispositional order must reflect a resolution consistent with the best interests of the children after consideration of all relevant facts and circumstances, and must be supported by a sound and substantial basis in the record" (*Matter of Alaina E.*, 33 AD3d 1084, 1087 [2006]). Here, notwithstanding the contrary position taken by the Department and petitioner, which were important but not binding (*see e.g. Matter of Daniels v Guntert*, 256 AD2d 940, 941 [1998]; *Matter of Richard YY. v Sue ZZ.*, 249 AD2d 885, 886 [1998]; *Matter of Nicotera v Nicotera*, 222 AD2d 892, 894 [1995]), Family Court's decision has a sound and substantial basis in the record.

Evidence at the hearing established that, shortly after one boyfriend was removed from her home by police in the summer of 2005, respondent permitted a Maryland man that she had met through a telephone dating service and had only seen twice (once for only 24 hours) to move into her home. This man thereafter inflicted excessive corporal punishment on Isaac in her absence. As a result of this incident, he was no longer permitted to be around her children unsupervised (although he continued to live in her home). There was also testimony that the children reported being exposed to inappropriate physical contact between respondent and this man.

Evidence further established that, during the fall of 2005, respondent refused to address her own mental health issues, struck Elijah with a coat hanger, permitted him to miss 14 appointments with his therapist and generally undermined all three children's therapy which interfered with their rehabilitation. It was also during this time period that then three-year-old Isaac fell out of a second-story window and respondent gave varying accounts to her caseworker of how this accident happened. Evidence established other transgressions on respondent's part during this time period, such as failing to insure that Kayla's asthma medication was available for use at school, permitting Kayla to do a chore that exacerbated her asthma, sending the children to school unkempt and missing doctor's appointments to address Shameka's heart condition. Particularly troubling to this Court was respondent's evasive testimony at the hearing on many of these issues and, in particular, her minimization of Elijah's previous suicide attempts. In short, while one or some of these incidents in isolation might have justified leaving the children in respondent's care in accordance with the position of petitioner and the Department, considered in the aggregate, they fully support Family Court's decision to do otherwise to ensure the best interests of the children.

Mercure, J.P., Crew III, Peters and Spain, JJ., concur. Ordered that the order is affirmed, without costs.

