Matter of J.H. (2007 NY Slip Op 50587(U))

[*1]

Matter of J.H.

2007 NY Slip Op 50587(U) [15 Misc 3d 1111(A)]

Decided on March 15, 2007

Family Court, Bronx County

Gribetz, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through April 6, 2007; it will not be published in the printed Official Reports.

Decided on March 15, 2007

Family Court, Bronx County
In the Matter of J.H. and J.G. Children under the age of eighteen alleged to be neglected by M.J., Respondent.
XX/07

Tamra Parson, Esq., Special Assistant Corporation Counsel, Family Court Legal Services, Administration for Children's Services, for Petitioner
Simpson Thacher & Bartlett LLP (by Bryce L. Friedman, Esq., Tamala Boyd, Esq., and Corey Lee, Esq.) For Respondent
Legal Aid Society (Tamara Steckler, Esq., by Lina G. Del Plato, Esq.) Law Guardian for the children

Sidney Gribetz, J.
In conjunction with the summations for the Court's determination of the fact-finding in this Article 10 case alleging child neglect, the Respondent mother also moves to dismiss the petition pursuant to Family Court Act §1051(c) on the grounds that the aid of the court is not required. I write this formal written decision to elaborate on the reasons for my oral ruling on the record denying the motion.
The Respondent mother, M.J., is the mother of two children (J.H., 4½ years old at the time of the filing of the petition, and J.G., eleven years old at the time) by two different fathers. Ms. J. was not married to either of the fathers, nor have there been any formal orders of custody. By mutual agreement with the fathers, at the time of the alleged incidents, the two children were in the physical custody of the mother, but the fathers had been involved in their respective childrens' lives.
[*2]
The petition in this case was filed on February 14, 2006, alleging that on two separate occasions, February 6 and February 8, 2006, the mother was severely intoxicated while taking care of the children, to the extent that she was taken to the hospital on an emergency basis. The petition also alleged that the mother suffered from mental health issues that impaired her ability to care for the children.
Upon the filing of the petition, the children were removed from her care and paroled to the custody of their respective non-respondent fathers (each of whom has now filed for custody). Extensive hearings were conducted in connection with the mother's application for the return of the children pursuant to Family Court Act §1028, an application which I denied on March 17, 2006. Thereafter, several pre-trial conferences were conducted, at which, inter alia, I monitored the mother's progress at substance abuse and individual counseling services in which she had voluntarily engaged. Finally, beginning in September 2006 and continued for several different days concluding on January 22, 2007, I conducted the fact-finding hearing in this matter.
After trial, I found that ACS proved by a preponderance of the evidence that the alleged February incidents occurred. During these chilling incidents, occurring late at night, Ms. J. was intoxicated to the extent that she was acting in such a bizarre manner that at first relatives, then Emergency Medical Service personnel, and eventually police were called to the scene. In the first incident, the mother was passed out and the child J.G. had to call for help, and the mother engaged in confrontations with the medical personnel. In the second event, the mother made threatening statements and had asked the child J.G. to call relatives. While the child J.G. was physically present, the mother drunkenly interfered with the aunt who had come to the apartment to rescue the children, and while half-naked in the common hallway engaged in an altercation in front of the child.
In this motion, the respondent contends that since she has cooperated and availed herself of the requisite services and that she is now a fit parent not likely to neglect the children in the future, and also because she has enjoyed increased contact with the children, including unsupervised visits without any incidents, the petition should be dismissed pursuant to Family Court Act §1051(c) because the aid of the court is no longer needed.
Both the petitioner ACS and the law guardian argue that because these services have not been completed, and that continued supervision and services will be needed for the children before they can return home, the motion should be denied.
Family Court Act §1051 governs orders sustaining or dismissing child abuse and neglect petitions. Subdivision c states: "If facts sufficient to sustain the petition under this article are not established, or if, in a case of alleged neglect, the court concludes that its aid is not required on the record before it, the court shall dismiss the petition...."
This provision has been contained in the Family Court Act since its initial passage in 1962, but it has been rarely utilized, and there is little case law to elucidate its meaning and [*3]application. "It permits the court to dismiss a petition satisfying the formal requirements of neglect', but not of sufficient significance to require the court's aid" (Committee Comments, NY Fam. Ct. Act, quoted in Douglas J. Besharov, Practice Commentaries to McKinney's, Family Court Act §1051).
This provision grants the Family Court broad discretion, but such discretion should be utilized with the best interests of the child of prominent concern. Two early reported cases that have been cited regularly in connection with this statute are Matter of G., 91 Misc 2d 911 and Matter of Foreman, 75 Misc 2d 348. These cases are from the 1970's, nascent periods before the full growth of child protective practice and the modern Family Court. In Matter of G., neglect charges were brought against the respondent mother who abandoned her newborn infant in a waste receptacle. Upon filing the case, the Bureau of Child Welfare ("BCW", a predecessor agency to ACS) did not request a remand of the child. The Family Court Judge nevertheless remanded the child, although the court granted leave to BCW to release the child after a home visit was made. The following day, the home visit was made, and BCW released the child to the mother, with frequent supervising visits by both BCW caseworkers and the Visiting Nurse Service, which was enlisted to assist the mother. By the time of the court hearing on the 1051(c) application, the Visiting Nurse Service and BCW reported that no further services were necessary and that mother and child were doing fine. The court also had before it reports of an independent social work investigation, the police detective assigned to the case, and the family's babysitter (a PTA president and mother of nine), all of which confirmed that there was no danger of neglect. For this reason, the court granted the application to dismiss the petition.
In the Foreman case, a neglect petition was filed in 1970 alleging that the mother's excessive use of alcoholic beverages made it impossible to care for the child. No action was taken on the petition, as the child was living with an aunt, and the mother failed to appear in court. In 1972, when the mother appeared, she admitted that she could not care for the child. An outside agency provided substance abuse and other services to the mother. By the court hearing one year later, the agency reported that the mother had conquered her use of alcohol and had been successful in strengthening herself enough to take on child care responsibility. Most importantly, because the agency voluntarily agreed to continue its supervisory services, the family court granted the application to dismiss because the aid of the court was no longer needed.
This section has been more aptly applied in less serious cases. For example, in Matter of Christine M., 157 Misc 2d 4, neglect charges were brought against a parent who for religious reasons refused to have the child inoculated against measles during a rampant measles epidemic. After extensive fact finding proceedings and other litigation regarding the impact of parent's religious beliefs, the measles outbreak had subsided. Because the parents had otherwise taken appropriate care of the children, and because the epidemic was no longer at issue, the court dismissed the petition finding that its aid was no longer required. Similarly, inMatter of Hickey, 124 Misc 2d 667, the petition was dismissed in an educational neglect case, because the child had attained the age beyond compulsory education. In these cases, the facts and circumstances had changed to the extent that the underlying basis for the neglect had been [*4]eliminated, so that the aid of the court was indeed no longer required within the meaning of Family Court Act §1051(c).
Other examples include Matter of BC (NYLJ 1/24/97 p. 31 col. 2, Family Court, Dutchess County), where the neglect stemmed from the parents' prior "youthfulness and immaturity", or Matter of Thomas (NYLJ 3/3/00 p.32 col. 4, Family Court, Queens County) where months prior to filing the Family Court neglect petition, the child was removed by ACS following the mother's arrest, then returned home with preventive services in place. By the time of the trial, the mother had completed the services, and there was no need for continued supervision. Also instructive are Appellate Division Third Department cases such asMatter of Lewis T., 249 AD2d 646 and Matter of Baby Girl W., 245 AD2d 830. In these cases the children were returned, and, in the case of Baby Girl W., the father had completed court-ordered classes and counseling services. Nevertheless, the Third Department held that dismissal under §1051(c) was not warranted since further supervision was still appropriate.
Here, Ms. J. argues that the aid of the court is no longer required because she has entered a chemical dependency program, where she has consistently tested negative, and has undergone psychiatric evaluations and is receiving counseling for her diagnosed depressive disorder. She also has attended parenting classes and similar services referred by ACS. In support of the motion she has submitted reports from these programs demonstrating her cooperation.
However, Ms. J. has not completed the chemical dependency program and is still attending. While to her credit she has tested clean for substance abuse so far, her alcohol issues are of such great depth that she requires continued treatment and a longer "track record" before the court can be assured that the substance abuse has been adequately addressed and that the children can be safely returned. Similarly, the mental health evaluations reveal deep seated emotional problems, including a suicide attempt in 1996, a history of recurring depressive episodes, including hospitalization in 2005, and a diagnosis of"Major Depressive Disorder". While Ms. J. has successfully embarked on a regimen of therapy and apparently is doing somewhat better, the need for continued services to deal with her stressors remains. Furthermore, the record demonstrates that as a result of these circumstances the child J.G. is in need of therapy to address the strained relationship, and such therapy is still ongoing.
Additionally, the relatively brief and conclusory reports submitted in connection with the motion can not, by themselves, give the court assurance that the mother has made sufficient progress so that it can be said that the aid of the court is no longer required. Following the neglect finding, the court has scheduled a dispositional hearing. At the dispositional hearing, under the glare of cross-examination and with more thorough examination and review of the therapists and their reports, the court can make a better assessment of the depth and extent of these services, and the mother's needs can be more fully explored.
Dismissal of a neglect case on the grounds that the aid of the court is no longer required should be applied in cases where the risk of danger to the child has passed. The relevant case [*5]law can be distilled to instruct us that key factors include for example situations where the underlying factual circumstances have changed so that the underlying risk of neglect has been eliminated, or to cases of lesser significance where the children have already been returned home for some time and there is substantial evidence of the thorough rehabilitation of the parent.
Here, the risk factors of the mother's recurring alcohol abuse and mental health episodes are serious enough to require continuing supervision and monitoring. Such supervision should be exercised by both the child welfare authority and, in the "best practices" of the contemporary Family Court, continued judicial monitoring. Specifically, the aid of the court is required to assure that the mother's programs are successfully completed, to assess if further or different services are needed in the future, and to monitor the effect of the stress and adjustment when the children eventually are returned.
Accordingly, the motion pursuant to Family Court Act §1051(c) is denied.
Dated:March 15, 2007