[59 NYS3d 355]

In the Matter of Leenasia C. and Others, Infants. Administration for Children's Services, Appellant; Lamarriea C., Respondent, et al., Respondent.

First Department, August 8, 2017

2

### APPEARANCES OF COUNSEL

*Zachary W. Carter, Corporation Counsel*, New York City (*Janet L. Zaleon* and *Deborah A. Brenner* of counsel), for appellant.

*The Bronx Defenders*, New York City (*Saul Zipkin* of counsel), for respondent.

*Tamara A. Steckler*, *The Legal Aid Society*, New York City (*Marcia Egger* of counsel), Attorney for the Children.

### OPINION OF THE COURT

RENWICK, J.

This Family Court Act article 10 child neglect proceeding raises an issue of apparent first impression for this Court: whether the Family Court properly granted respondent mother a suspended judgment, "retroactively," in order to vacate a neglect finding and dismiss a neglect proceeding. Initially, the mother consented to a neglect finding and the Family Court's dispositional order released the children to the mother, under the supervision of petitioner, Administration for Children Services (ACS), for 12 months. At the end of this period, upon satisfactorily completing the terms of the dispositional order, the mother made a postdisposition motion to modify the dispositional order. The court granted a suspended judgment, retroactively, due to the mother's compliance with the conditions of the dispositional order, and vacated the neglect finding, as consistent with the children's best interest. For the reasons explained below, we find not only that the Family Court

Act permits such a retroactive remedy, but that the remedy served the children's best interest under the circumstances of this case.

## Factual and Procedural History

The facts that led to the mother consenting to the neglect finding are essentially not in dispute. The mother, Lamarriea C., has four children who were the subject of this neglect proceeding. On or about May 22, 2014, ACS filed neglect petitions against the mother and her allegedly abusive boyfriend, who was also legally responsible for the children.[1] The petition against the mother alleged that police found 22 bags of PCP in the refrigerator of the mother's apartment, cartridges in the living room, and marijuana cigars in several rooms.[2] The apartment was dirty and crawling with roaches and spiders. The petition further alleged that the mother admitted to leaving her children in the care of her boyfriend, while she went to her job as a home health aide, and that she herself occasionally used marijuana and PCP. The mother also admitted that she did not manage the medication for her eldest daughter, who suffered from PTSD, ADHD, bipolar disorder, and depression.

The children were remanded to ACS, and eventually transferred to the kinship foster home of their mother's great aunt. After the abusive boyfriend was removed from the home, the mother moved under Family Court Act § 1028 for the children's return. The court denied the mother's motion, stating that it still had concerns about the children's safety. However, the mother was granted liberal supervised visitation.

On July 15, 2014, the mother appeared at court seeking unsupervised visitation with her children. She reported that she had been seeing the children up to six times a week in their foster home, and had begun treatment at Women in Need (WIN) five days a week. The Attorney for the Children (AFC) supported unsupervised visitation and reported that the children wanted to return home with their mother; ACS opposed unsupervised visitation. The agency caseworker reported that on an announced visit to the mother's home two weeks earlier, he did not see any vermin or other "safety factors." In addition to the liberal visitation schedule in place, the Family Court

---

1. The ultimate disposition of the petition against the boyfriend is not the subject of this appeal.

2. As a result of the police's search of the apartment, the boyfriend was prosecuted for selling drugs and incarcerated until February 2015.

granted the mother one-hour unsupervised "sandwich visits" twice a week.

On August 20, 2014, a WIN report was submitted to the court. The mother's WIN case manager reported that she was doing "very well" in treatment, and was scheduled to attend five days a week for anger management, parenting skills, relapse prevention, peer support and individual counseling. Random drug testing since July 25, 2014 had consistently yielded negative results. The Family Court ordered visits four days a week, for a minimum of four hours, and six hours one day a week.

On September 30, 2014, the mother requested that the case be adjourned for disposition. Instead, a finding of neglect was entered on consent. The Family Court stated that it would "hold off" on disposition, but would consider an application for a suspended judgment or some other remedy in the future. ACS agreed that the mother could have additional overnight visitation with the children at least two nights per week since she and her abusive boyfriend had not been in contact since the petition was filed.

On October 15, 2014, the agency reported that the mother was still testing negative for drugs, she was "cooperative and engaged," and the children were doing well at school. The children were "very excited" to be in the home, which had ample food, proper bedding, and no sign of the earlier insect infestation. The Family Court, by dispositional order, released the children to the mother, under ACS supervision, for 12 months upon certain conditions, such as continued negative results from random drug testing, compliance with recommended services, and maintenance of a clean and stable home for the children.

On January 6, 2015, both ACS and WIN submitted favorable reports about the mother, who was complying with all conditions placed upon her in the dispositional order. Positive reports from ACS and the Fordham Treatment Center, where two of the children were receiving mental health services, were submitted to the court on May 12, 2015.

On September 25, 2015, the mother brought a motion pursuant to Family Court Act § 1061, seeking (1) to change the October 15, 2014 dispositional order to a suspended judgment; (2) to vacate the September 30, 2014 fact-finding order; and (3) to dismiss the neglect petition. The mother argued that the Family Court was empowered to grant such relief, which was

warranted in her situation. As support, the mother relied on the positive reports from ACS, WIN, and the Fordham Treatment Center, and her negative random drug test results dating back to July 2014. Specifically, the mother argued that a suspended judgment would help her to expunge the "neglect" finding in the State Central Register, which had interfered with her job as a home health aide, and could act as a barrier to other employment opportunities in working with children, thus harming her ability to financially support her children.[3]

ACS opposed the motion, arguing that the mother had not satisfied the "good cause" requirement under Family Court Act § 1061 simply by complying with the dispositional order. Furthermore, ACS argued that vacating the neglect finding was not in the children's best interest, given the seriousness of the allegations that gave rise to the neglect finding, for example, the presence of drugs, guns, and vermin in the home. ACS also asserted that, even if a suspended judgment had been appropriate at the time of disposition, issuing a postdisposition suspended judgment ran contrary to the text and purpose of the Family Court Act. ACS expressed concern that entering a retroactive suspended judgment would not only be improper, but would also violate public policy by allowing parents to vacate a neglect finding or circumvent the requirements of a suspended judgment simply by complying with court orders. According to ACS, the mother's "barriers to employment" argument was merely hypothetical, and, in any event, improving the mother's job prospects was not the Family Court's central concern; its central concern was only protecting the children's best interests.

The AFC submitted an affirmation in support of the motion, based on conversations with the children, the mother, the social worker, and a review of the record. Arguing that Family Court Act § 1061 enabled the Family Court to grant the motion for good cause, the AFC asserted that the mother had met this criteria because "she successfully overcame the problems that led to the initial filing of the petition, completed her service plan, completed 17 months of ACS supervision, and had demonstrated a close bond with her children throughout the entirety of this case." The AFC opined that ACS's argument that

---

**3.** By July 2014, the mother was no longer working. She reports that she was suspended from her position as a home health aide during the neglect proceeding because she was deemed unqualified for her job because she had a neglect case.

a suspended judgment could only be issued for prospective obligations was "nonsensical," as it was uncontested that the mother had already satisfied all of the conditions imposed upon her. Likewise, the AFC rejected ACS's argument that granting retroactive relief here would implicate broader public policy issues, countering that each case turned on its own specific facts. The AFC maintained that the family would only be destabilized by poverty if the mother's employment opportunities were curtailed by the neglect finding, and, therefore, the requested relief was in the children's best interest.

On November 16, 2015, the Family Court granted the mother's motion for a retroactive suspended judgment, to expire the same day, with no further conditions or supervision. Noting that it considered the impact on the mother's employment opportunities, the court also vacated the neglect finding, stating, "I believe the children are safe, and nobody has suggested that they're not in good care right now." ACS now appeals.

### Discussion

■ As a threshold consideration, we find that a postdispositional, retroactive grant of a suspended judgment is consistent with the statutory scheme for child protective proceedings contained in the Family Court Act. To be sure, we are cognizant that the Family Court is a court of limited jurisdiction. "[I]t has only such jurisdiction and powers as the Constitution and the laws of the State expressly grant it. . . . [I]t can only determine matters before it in accordance with the powers expressly granted to it" (Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 115 at 23 [1983 ed]).

The pertinent statute is Family Court Act article 10, entitled "Child Protective Proceedings," which concerns both child neglect and abuse proceedings. Its purpose as stated in Family Court Act § 1011 is "to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being" by providing "a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that [her or] his needs are properly met." The statutory scheme is intended to be remedial, "not punitive in nature" (*Matter of Diane P.*, 110 AD2d 354, 358 [2d Dept 1985], *appeal dismissed* 67 NY2d 918 [1986]). Accordingly, courts have consistently

held that the purpose of the provision is subverted when it is used to punish parents in the name of child protection (*see e.g. Matter of Jessica FF.*, 211 AD2d 948, 951 [3d Dept 1995, Casey, J., dissenting in part]; *Matter of Jessica C.*, 132 Misc 2d 596, 597-598 [Fam Ct, Queens County 1986]; *Matter of Linda S.*, 148 Misc 2d 169, 173 [Fam Ct, Westchester County 1990]; *Matter of Theresa C.*, 121 Misc 2d 15, 20 [Fam Ct, NY County 1983]).

Consistent with that purpose, the Family Court Act provides the Family Court with the discretion to dismiss a petition at different stages of a neglect proceeding when doing so would be consistent with the best interest of the subject children. For instance, at the fact-finding stage, Family Court Act § 1051 (c) authorizes dismissal upon two separate and distinct grounds. First, under that subdivision the Family Court is required to dismiss a neglect petition (as well as an abuse petition), "[i]f facts sufficient to sustain the petition under this article are not established" (Family Ct Act § 1051 [c]).

Second, at the fact-finding stage, the subdivision permits a dismissal of a neglect petition (but not an abuse petition) that satisfies the formal requirements of neglect where the Family Court has concluded that "its aid is not required" (*id.*; *see also Matter of Angela D.*, 175 AD2d 244, 245 [2d Dept 1991]; *Matter of Baby Girl W.*, 245 AD2d 830, 831-832 [3d Dept 1997]; *Matter of Diana Y.*, 246 AD2d 340, 340 [1st Dept 1998]). The Family Court's exercise of its authority under this subdivision is discretionary and must be utilized in a manner that emphasizes and promotes the best interests of the child (*id.*). Thus, in *Matter of J.H.*, the court held that "[d]ismissal of a neglect case on the grounds that the aid of the court is no longer required should be [granted] in cases where the risk of danger to the child has passed" (15 Misc 3d 1111[A], 2007 NY Slip Op 50587[U],*4 [Fam Ct, Bronx County 2007]). For example, in *Matter of Angel R.* (285 AD2d 407 [1st Dept 2001]), this Court found that the Family Court did not err in dismissing a neglect petition based on the petitioner's lack of readiness to proceed at a fact-finding hearing, where the Family Court concluded that its aid was not required because the respondent's two older children were in Puerto Rico with their grandmother and the youngest child was already under the petitioner's supervision.

Likewise, at the postdispositional stage of the neglect proceeding, the Family Court Act provides the Family Court with the discretion to dismiss a petition. Family Court Act § 1061 authorizes the Family Court to modify any order in a child protective proceeding "[f]or good cause shown." As this Court has noted, "Section 1061 'expresses the strong Legislative policy in favor of continuing Family Court jurisdiction over the child and family so that the court can do what is necessary in the furtherance of the child's welfare' " (*Matter of Shinice H.*, 194 AD2d 444, 444 [1st Dept 1993], quoting Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1061 at 461 [1983 ed]). Thus, as with an initial order, a modified order "must reflect a resolution consistent with the best interests of the children after consideration of all relevant facts and circumstances, and must be supported by a sound and substantial basis in the record" (*Matter of Elijah Q.*, 36 AD3d 974, 976 [3d Dept 2007] [internal quotation marks omitted], *lv denied* 8 NY3d 809 [2007]; *see also Matter of Brandon DD. [Jessica EE.]*, 74 AD3d 1435, 1437 [3d Dept 2010]).

Significantly, Family Court Act § 1061 applies to both fact-finding and dispositional orders. In fact, the language of the statute, in relevant part, authorizes the court to modify or vacate "any order issued in the course of a proceeding under this article" (Family Ct Act § 1061). This "conclusion [that the Family Court may modify or vacate fact-finding and dispositional orders] is supported by the principle of statutory interpretation that, had the Legislature intended to exclude predispositional orders, it would have done so explicitly" (*Matter of Chendo O.*, 193 AD2d 1083, 1084 [4th Dept 1993], citing McKinney's Cons Laws of NY, Book 1, Statutes § 74). Indeed, "a more general, all encompassing statement of authority over any prior order is hard to imagine" (*Matter of Chendo O.*, 193 AD2d at 1084, quoting Besharov, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1051, 1993 Pocket Part at 174).

Given that the Family Court has broad authority to modify any order issued in the course of a child protective proceeding, upon a good cause showing that the modification promotes the best interests of the children (*see Matter of Chendo O.*, 193 AD2d at 1084), it follows that the Family Court Act does not prohibit the Family Court from granting a respondent a suspended judgment, "retroactively," in order to vacate a finding of neglect and dismiss a neglect proceeding.

ACS, however, argues that granting a suspended judgment retroactively rewards a respondent's compliance with the terms of a different disposition and circumvents the "good cause" requirements of Family Court Act § 1061. In other words, ACS argues that, since a suspended judgment is a dispositional alternative, which statutorily prescribes what the parents must do in the future, compliance with the terms of a different dispositional alternative could not have been contemplated as a basis for satisfying the good cause requirement of Family Court Act § 1061.

Petitioner's interpretation of the suspended judgment statute is flawed. Family Court Act § 1053 is the statute governing suspended judgments. The statute does not define suspended judgments nor provide any guidance as to the proper scenarios in which a court should consider a suspended judgment. However, at its core, a suspended judgment affords a respondent the opportunity to correct his or her neglectful actions (*see* Family Ct Act § 1053 [a]; *accord Matter of Eric Z. [Guang Z.]*, 100 AD3d 646, 647-648 [2d Dept 2012]; *Matter of MN*, 16 Misc 3d 499, 508 [Fam Ct, Monroe County 2007]).

Indeed, a suspended judgment is always preceded by a finding of neglect, unlike an adjournment in contemplation of dismissal (*compare* Family Ct Act § 1039 [f], *with* Family Ct Act § 1053 [a]). In addition, in a suspended judgment order, the respondent is required to abide by certain terms and conditions, much like suspended judgments in termination of parental rights cases (*see* Family Ct Act § 1053 [a]). The statute requires that the terms and conditions must "relate to the acts or omissions of the parent" (*id.*). The statute also mandates that the rules of court shall define the permissible terms of a suspended judgment (*id.*). These rules require that the order include at least one of the following directives to the respondent: (1) refrain from acts/conditions that were found to have caused the abuse or neglect; (2) provide adequate food, clothing, medical care and other needs for the child; (3) provide proper care to the child and cooperate in getting the child an appropriate psychiatric diagnosis and treatment; (4) take steps to ensure the child's attendance at school; and (5) cooperate in getting needed services for the respondent and the child (Uniform Rules for Fam Ct [22 NYCRR] § 205.83). Finally, Family Court Act § 1053 (b) specifically states that none of the terms of a suspended judgment can last more than a year, absent a showing of exceptional circumstances after the expiration of that period

(*see Matter of Crystal S. [Elaine S.]*, 74 AD3d 823 [2d Dept 2010]).

Family Court Act § 1053, however, is silent as to what it means in practical terms for a respondent at the expiration of the suspended judgment. But because there is no statutory presumption of compliance with the terms and conditions of a suspended judgment, a judgment itself does not expire by operation of law (*see Matter of Jonathan B.*, 5 AD3d 477, 479 [2d Dept 2004], *lv dismissed* 2 NY3d 791 [2004]). As such, the Family Court retains jurisdiction over the neglect proceedings to determine compliance with the terms and conditions (*id.*; *see Matter of Amelia W. [Gloria D.W.]*, 77 AD3d 841 [2d Dept 2010]). Moreover, compliance with the terms of a suspended judgment may but does not necessarily lead to vacatur of the neglect finding (*see Matter of Anoushka G. [Cyntra M.]*, 132 AD3d 867, 868 [2d Dept 2015], citing Merril Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1053 at 57 [2010 ed]; *see also Matter of Baby Girl W.*, 245 AD2d 830, 833 [3d Dept 1997]). Rather, pursuant to Family Court Act § 1061, the Family Court retains jurisdiction to consider a motion by any party to enforce, modify, or vacate an article 10 fact-finding order or dispositional order at any time, upon a proper factual showing of compliance or noncompliance with the order's terms and conditions and a showing of good cause (*see e.g. Matter of Araynah B.*, 34 Misc 3d 566 [Fam Ct, Kings County 2011] [granting a suspended judgment, dismissing a neglect petition and vacating the initial finding of neglect because it was in the children's best interests]; *see also Matter of Kenneth QQ. [Jodi QQ.]*, 77 AD3d 1223, 1224 [3d Dept 2010]; *Matter of Elijah Q.*, 36 AD3d 974 [3d Dept 2007], *lv denied* 8 NY3d 809 [2007]).

Still, ACS contends that the Family Court improperly employed a "legal fiction" by changing the dispositional release[4] into a suspended judgment, the conditions of which had already been completed at the time of its entry, when the purpose of a suspended judgment is to impose prospective conditions on a parent. However, as the mother and the AFC correctly point out, this argument ignores that the conditions imposed upon the mother by the dispositional order were the same as would

---

4. As aforementioned, the dispositional order released the children to the mother, under ACS supervision, for 12 months upon certain conditions, such as continued negative results from random drug testing, compliance with recommended services, and maintenance of a clean and stable home for the children.

have been required under a suspended judgment.[5] Thus, for all intents and purposes, the remedial intent of the statute was satisfied.

■ We reject ACS's alternative argument that the mother did not demonstrate good cause for the requested relief. To begin with, it is undisputed that the mother substantially, if not fully, complied with the dispositional order, and that the children were doing well under her care. As indicated, the AFC supported the motion, maintaining that a suspended judgment leading to vacatur of the neglect finding was in the children's best interest because the mother would have access to more employment opportunities. Significantly, ACS did not cite specific concerns as to the children's safety in opposing the motion, only a generalized objection that, in the event of future neglect, ACS would not have access to the mother's files.

We recognize the fine balance between protecting children from future neglect and destigmatizing a parent in an effort to stabilize the family unit. However, courts have identified four factors, that we also find relevant, in determining whether to vacate a neglect finding: "(1) respondent's prior child protective history;[6] (2) the seriousness of the offense; (3) respondent's remorse and acknowledgment of the abusive/neglectful nature of his or her act; and (4) respondent's amenability to correction, including compliance with court-ordered services and treatment" (*Matter of Araynah B.*, 34 Misc 3d 566, 575 [Fam Ct, Kings County 2011]; *see Matter of MN*, 16 Misc 3d 499, 504 [Fam Ct, Monroe County 2007]).

Here, we find that consideration of the above factors weighs in favor of vacating the neglect finding and dismissing the petition. The mother had no prior history of neglect, the children were not actually harmed, and the mother actively engaged with services and treatment. Throughout the proceedings, the mother tested negative for illicit substances during random drug testing. It is also undisputed that the mother displayed an unwavering commitment to be reunited with her children and to maintain sobriety in the face of ending an abusive relationship that contributed to the neglect finding (*compare Mat-*

---

5. In this case, 22 NYCRR 205.83 was appended to the dispositional order. The dispositional order closely tracked the terms and conditions for a suspended judgment.

6. ACS argues that this factor suggests the importance of maintaining findings of neglect, but we find that the analysis involves a calculation informed by the particular circumstances of the case.

*ter of Maria S. [Samantha S.—Angelo S.]*, 45 Misc 3d 1213[A], 2014 NY Slip Op 51553[U] [Fam Ct, Kings County 2014], *appeal dismissed* 135 AD3d 944 [2d Dept 2016]; *Matter of O*, 29 Misc 3d 1233[A], 2010 NY Slip Op 52133[U] [Fam Ct, Queens County 2010]).

Moreover, we find that the Family Court properly considered the practical effect of vacating the neglect finding, that is, removal of a barrier to the mother's ability to find work in her chosen field which was in the best interest of the children (*see Matter of Whitley v Whitley*, 33 AD3d 810, 810 [2d Dept 2006] [noting that "the financial status and ability of each parent to provide for the child" is a factor to be considered in determining a child's best interest (internal quotation marks omitted)], *lv denied* 8 NY3d 809 [2007]). From a practical standpoint, it cannot be said that the Family Court was elevating the mother's interests above her children's by considering matters of employment; poverty makes families vulnerable.

We recognize that the mother could still seek to ameliorate a neglect finding through other channels. Such a finding, however, would still hinder the mother's ability to find work, as employers would need to justify their hiring decision in writing, or the mother would be required to request a fair hearing on the issue (*see generally Matter of Natasha W. v New York State Off. of Children & Family Servs.*, 145 AD3d 401, 405-406 [1st Dept 2016]).[7] With the neglect finding vacated, the mother could seek to expunge the indicated finding in the State Central Register (*see McReynolds v City of New York*, 18 AD3d 316 [1st Dept 2005], *lv denied* 5 NY3d 707 [2005], *cert dismissed* 546 US 1027 [2005]). This possibility may be in the best inter-

---

7. "All childcare agencies and other agencies licensed by the state to provide certain services to children are required to inquire whether applicants for employment or to become foster or adoptive parents are subjects of indicated reports (Social Services Law § 424-a). An agency may choose to hire or approve persons on the list of those with indicated reports, but if it does, the agency must 'maintain a written record, as part of the application file or employment record, of the specific reasons why such person was determined to be appropriate' for approval (Social Services Law § 424-a [2] [a]). The names of subjects of indicated reports remain on the list until 10 years after the youngest child referred to in the report turns 18, unless earlier expunged (Social Services Law § 422 [6])" (*Matter of Natasha W. v New York State Off. of Children & Family Servs.*, 145 AD3d 401, 404-406 [1st Dept 2016]).

est of the children if it would open new avenues for the mother to better support her family.

Finally, we find unpersuasive ACS's argument that granting the mother's motion in this case would set a "bad precedent." Any such motion would still be subject to close scrutiny of and would depend heavily on the particular facts of each individual case, which would directly inform the Family Court's decision. As such, it is nothing more than exaggerated hyperbole to argue that the floodgates will open with the rare grant, herein, of a retroactive suspended judgment leading to the dismissal of the petition and vacatur of the neglect finding. On the contrary, those parents who work assiduously toward reversing the negative and detrimental forces that led to the finding of neglect in the first instance will have a real opportunity to benefit from the Family Court's remedial power. Ultimately, where children's welfare is at stake, public policy militates toward enabling the Family Court greater dexterity to fashion relief, not less, in accordance with the intent and purpose of Family Court Act § 1061.

Accordingly, the order of the Supreme Court, Bronx County (Robert D. Hettleman, J.), entered on or about November 16, 2015, which granted respondent mother's motion to modify the order of disposition entered on or about October 15, 2014, to the extent of entering in its stead a suspended judgment set to expire the same day as entry, dismissing the neglect petition, and vacating the neglect finding, should be affirmed, without costs.

ACOSTA, P.J., MANZANET-DANIELS, MAZZARELLI and ANDRIAS, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about November 16, 2015, affirmed, without costs.