Matter of G.D. (2024 NY Slip Op 50761(U))

[*1]

Matter of G.D.

2024 NY Slip Op 50761(U)

Decided on June 24, 2024

Family Court, Bronx County

Kaplan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 24, 2024
Family Court, Bronx County

Matter of G.D.

Index No. XXXXX

Kevin Ruiz, Esq. and Ian Freeman, Esq., Administration for Children's Services of the City of New York Family Court Legal Services
Jessica Horan-Block, Esq., The Bronx Defenders, Attorney for Respondent M.R.
Lisa Howell, Esq., Center for Family Representation, Attorney for Respondent T.D.
Ariella Goldstein, Esq., The Legal Aid Society Juvenile Rights Practice, Attorney for the Child G.D.

David J. Kaplan, J.

M.R., having previously been found to have neglected the Subject Child G.D. (dob XX/XX/2022), moves pursuant to Family Court Act § 1061 to modify this Court's September 15, 2023 Order of Disposition [FN1]
to retroactively suspend judgment pursuant to Family Court Act § 1053 and vacate the finding of neglect and dismiss the petition. New York City Administration of Children's Services ("ACS") and the Attorney for the Child each submitted responsive papers opposing the motion. Movant thereafter submitted a letter dated February 26, 2024 from a social worker at The Jewish Board and an April 11, 2024 letter from her clinical team at Montefiore Medical Center, where she participated in their Group Attachment Based Intervention ("GABI") program, for the Court's consideration.
The underlying article 10 petition was filed by ACS against M.R. and co-respondent T.D. on November 18, 2022 alleging the abuse and neglect of the Subject Child G.D. resulting in G.D. being remanded to the care of ACS. On September 15, 2023, the Court accepted a Family Court Act § 1051(a) submission to neglect by M.R. on consent of the parties. As pertinent here, the Court found M.R. neglected G.D., who was approximately five months old at the time of the filing of petition, in part based on:
"According to Dr. XXXXX of Jacobi Hospital, the child was brought into the hospital on or about November 10, 2022 due to not being able to move her arm. According to Dr. XXXXX, x-rays were conducted and a fracture to the left arm was discovered. According to Dr. XXXXX, there was a skeletal survey of the child completed and it was learned the child had femur fractures on both legs, a fracture by the knee on both legs, and a fracture by the ankle on both legs. According to Dr. XXXXX, the child's arm fracture was acute and the other fractures were older and healing. According to Dr. XXXXX these injuries are highly suspicious for non-accidental trauma. According to Dr. XXXXX, blood work was taken and a family history was obtained and the child does not have any known medical conditions that would explain the injuries."
Additionally, the Court found that:
"According to the maternal aunt, she has text messages between her and the Respondent Mother from on or about November 1, 2022 and the maternal aunt told the respondent mother the child kept crying and the respondent mother responded that she has been like that all day. According to the maternal aunt, she then told the Respondent mother that the maternal grandmother thinks the Respondent mother should take the child to the doctor because every time they moved the child she would cry and respondent mother responded 'Mmmmm.' The maternal aunt then told the Respondent mother that the child looks pale and the respondent mother stated 'Theyre not gonna do anything unless shes breathing weird.' According to the maternal aunt, she then informed the respondent mother that the child keeps snorting and twitching when she sleep and hyperventilating and the Respondent mother responded 'Yeah I warned mom.' According to the maternal aunt, she also has text messages with the Respondent Mother from on or about November 8, 2022, where she informed the respondent mother that the child is non-stop crying and that the maternal grandmother indicated that the child was crying really loud and the Respondent mother asked the maternal aunt if the maternal grandmother just changed the child's diaper or something and when the maternal aunt responded yes, the respondent mother stated 'For some reason her legs and arms be really sensitive.'"
An Order of Disposition was thereafter entered on consent whereby G.D. was placed in the care of the Commissioner of ACS with an immediate trial discharge of the Subject Child to M.R. and co-respondent T.D.. M.R. was further ordered, inter alia, to engage in preventive services, comply with the GABI program, engage in individual therapy, and comply with a limited order of protection on behalf of the Subject Child. Thereafter, on January 3, 2024, the parties consented to G.D. being final discharged to the care of M.R. and co-respondent T.D.. Counsel for M.R. noted at that time that she intended to file a motion to have the finding of neglect against her client vacated. On March 5, 2024, counsel for M.R. filed the subject motion seeking to modify the Order of Disposition retroactively to suspend judgment, vacate the finding of neglect and dismiss the petition; and the matter was calendared to be heard on April 16, 2024.
ACS and the Attorney for the Child oppose the motion, in part, by arguing that the Court lacks jurisdiction to entertain the application as supervision under the Order of Disposition expired on January 3, 2024. In support of its position, ACS cites to Matter of Jamie J. (Michelle E.C.), 30 NY3d 275, 287 (2017), for the proposition that "the Court's jurisdiction ends with the order of disposition." Matter of Jamie J. involved the issue of whether the Court could conduct permanency hearings and continue foster care after the underlying article 10 petition has been dismissed. The Court of Appeals held that the Family Court does not have jurisdiction to do so as such power is not delineated by Family Court Act § 1088 which addresses, inter alia, limited situations where the court can continue to hold hearings regarding placement of a child. In reaching this conclusion, the Court of Appeals noted that "Article 10 erects a careful bulwark against 'unwarranted state intervention into private family life' for which its drafters had a deep concern" (Matter of Jamie C., 30 NY3d at 284 quoting Nicholson v Scoppetta, 3 NY3d 357, 368 [2004]).
The Matter of Jamie J. is not applicable here as movant is not seeking further governmental intervention but rather relief from the stigmas associated with a finding of neglect which is expressly provided for by Family Court Act § 1061 (see Matter of Jveya J. [Ebony W.], 194 AD3d 937, 938 [2d Dept 2021] [noting that "Pursuant to Family Court Act § 1061, the [*2]Family Court may set aside, modify, or vacate any order issued in course of a child protective proceeding for good cause shown"]). Moreover, "Family Court Act § 1061 does not include a time limit and a finding of neglect does not expire with an order but constitutes a 'permanent and significant stigma which might indirectly affect [a person's] status in future proceedings'" (Matter of Josephine G.P. [Madeline P.], 126 AD3d 906, 906-7 [2d Dept 2015] [citations omitted]). As noted in the practice commentaries relating to Family Court Act § 1061,"[t]here is no statute of limitations to govern a Section 1061 motion . . . The evidence upon which a Leenasia C. motion could be justified may hence mature months or years down the road from disposition" (Prof. Merril Sobie, Prac Commentaries, McKinney's Family Court Act § 1061 [online version]).
This Court is not persuaded by ACS and the Attorney for the Child's argument that movant's failure to request this relief prior to the final discharge of her child to her care precludes it from entertaining this application.[FN2]
As noted in the Matter of Leenasia C. [Lamarriea C.], 154 AD3d 1, 9 (1st Dept 2017), "[g]iven that the Family Court has broad authority to modify any order issued in the course of a child protective proceeding, upon a good cause showing that the modification promotes the best interests of the children, it follows that the Family Court Act does not prohibit the Family Court from granting a respondent a suspended judgment, 'retroactively,' in order to vacate a finding of neglect and dismiss a neglect proceeding." Consistent with Leenasia C., courts have repeatedly considered such applications after supervision has expired (see e.g. Matter of Boston G. [Jennifer G.], 157 AD3d 675 [2d Dept 2018] [affirming trial court's granting of respondent's application to vacate a finding of neglect pursuant to Family Court Act § 1061 which was made six months after supervision under the Order of Disposition expired]; see also Matter of Arielle A.D. [Keith D.], 192 AD3d 1019 [2d Dept 2021] [Order denying application for retroactive suspended judgment and dismissal of petition, which was requested after the Order of Disposition expired, affirmed on the merits and not jurisdictional grounds]). To adopt ACS and the Attorney for the Child's rationale in arguing that the present application is time-barred would take a punitive approach to child protective proceedings which would run contrary to "the statutory scheme [which] is intended to be remedial, 'not punitive in nature'" (Matter of Leenasia C., 154 AD3d at 7).
ACS further voices concern that if the Court were to find it has jurisdiction to entertain the present motion, similar applications may be raised years later causing great burden on it and the courts. Such considerations cannot serve as a bar to an aggrieved individual seeking relief from the courts absent legislative intervention. Rather the delay in making the application is merely a factor for the Court to consider as to whether to grant such relief. Accordingly, the Court finds it has jurisdiction to address the merits of M.R.'s application seeking a retroactive [*3]suspended judgment, vacatur of the finding of neglect, and dismissal of the proceeding.
While movant frames the requested relief as one for a retroactive suspended judgment pursuant to Family Court Act § 1053, the heart of the matter is ultimately whether good cause exists to vacate the finding of neglect as there is no longer a statutory basis for further supervision over the family and none is being sought. Courts have identified four factors to consider when determining whether to vacate a finding of neglect: "(1) respondent's prior child protective history; (2) the seriousness of the offense; (3) respondent's remorse and acknowledgment of the abusive/neglectful nature of his or her act; and (4) respondent's amenability to correction, including compliance with court-ordered services and treatment" (Matter of Leenasia C., 154 AD3d at 12).
Despite ACS's insistence in both its opposition papers and at oral arguments that the Court conduct an evidentiary hearing on the motion, there are no issues warranting such a hearing as the Court has sufficient information before it to render a decision (cf. Matter of Jamel V.D.C. [Charlene M.], 2024 NY Slip Op 02320 [2d Dept May 1, 2024] [noting that the "conducting of a hearing under section 1061 is not mandated, but is left entirely to the Family Court's discretion"]; Matter of Sutton S. [Abigail E.S.], 152 AD3d 608, 609 [2d Dept 2017] [holding that "Where the court possesses information sufficient to afford a comprehensive, independent review, a hearing is not required").[FN3]
In respect to prior child protective history, ACS represented at the initial court appearance on this matter on November 18, 2022 that G.D. was M.R.'s only child and there had not been prior child protective involvement with the family. Turning to consideration of the seriousness of offense, there is no dispute that there was a finding of neglect based in part that the child had femur fractures on both legs, a fracture by the knee of each leg, and a fracture by the ankle on both legs. The fractures were determined to be highly suspicious for non-accidental trauma by an attending physician and were in different stages of healing indicating that they did not all occur at the same time. In terms of remorse and acknowledgment, M.R. in her affidavit in support of the motion continues to deny knowing how the child incurred the various fractures but states that "I'm so sorry that anything bad happened to her and I will do anything I can to protect her I know that her safety is always my responsibility." Finally, it is undisputed that M.R. timely completed her service plan with positive reports from her providers and the foster agency during their respective involvement.
Counsel for M.R. explains in her moving papers that the relief being sought is largely in part due to the impact that being listed in the State Central Registry ("SCR") can affect M.R.'s ability to work with children and that she intends to seek to have her name expunged from the [*4]registry if the finding is vacated. M.R., in her supporting affidavit, states that although currently employed, she is enrolling in a social worker program and plans to "work in the child welfare system to guide families through it." 
As with an initial order, a modified order "must reflect a resolution consistent with the best interests of the children after consideration of all relevant facts and circumstances, and must be supported by a sound and substantial basis in the record" (Matter of Elijah Q., 36 AD3d 974, 976 [3d Dept 2007] [internal quotation marks omitted] lv denied 8 NY3d 809 [2007]). Here, after giving consideration to the requisite factors, the Court finds that movant has failed to demonstrate good cause to modify the Order of Disposition and vacate the finding of neglect. Although the Court commends M.R. for her completion of her service plan and successful reunification with her child, it does not believe that the ultimate relief sought  vacatur the finding of neglect  is appropriate under the circumstances. As noted above, the seriousness of the finding of neglect is a material factor in deciding whether to afford the relief requested. Implicit in consideration of that factor is also the broader consideration as to whether a lasting finding of neglect is not only necessary to ensure the safety of the Subject Child, but that of any future children who may be in M.R.'s care. The finding of neglect here — involving several broken bones at different stages of healing on a five-month-old child and a further failure by movant to recognize the need for and timely seek medical care — is of such a serious nature that it should not be set aside absent compelling reasons. Notably, while M.R. has expressed remorse that the injuries occurred, she still has yet to acknowledge any meaningful degree of responsibility for how the injuries arose or why she failed to obtain medical care for the injured infant in a timely manner. 
In light of the severity of the finding of neglect in this instance, and the limited insight that has been offered by movant, the Court finds not only that good cause has not been set forth to modify the Order of Disposition but that it is in the best of the interests of the Subject Child not to modify the Order; and further that compelling reasons remain to leave the finding of neglect intact along with any restrictions that may result in her ability to be employed to work with children in certain areas as a result of name remaining on the State Central Registry over the requisite eight-year period (see generally Social Services Law § 422; cf. Matter of Sophia W. [Tiffany P.]. 176 AD3d 723, 725 [2d Dept 2019] [holding that court did not abuse its discretion in denying mother's request to modify disposition for a suspended judgment and vacatur of the finding of neglect despite her compliance with her service plan noting the "grave medical harm" to the child and that the child was seven months old at the time of the incident]; Matter of Alisah H. [Syed H.], 168 AD3d 842, 844 [2d Dept 2019] [reversing trial court finding that it erred in modifying disposition to vacate finding of neglect despite completion of service plan "given the serious and repeated nature of his conduct and his lack of remorse for his actions"]; Matter of Jessiah K. [Shakenya P.], 207 AD3d 724, 725 2d Dept 2022] [holding that "the Family Court providently exercised its discretion in denying the mother's motion to vacate the finding of neglect given, inter alia, the serious nature of the mother's conduct and the evidence showing the mother's lack of remorse for her actions"]; Matter of Cassidy B. [Cyntora B.], 2024 NY Slip Op 02319 [2d Dept May 1, 2024] [holding that trial court did not err in denying a motion to modify disposition to a suspended judgment without a hearing where "the offense was serious and that the mother failed to show remorse or acknowledge the abusive nature of the child's injuries"]).
Accordingly, M.R.'s motion requesting that the Court modify the September 15, 2023 Order of Disposition to retroactively enter a suspended judgment and vacate the finding of [*5]neglect is denied.

Footnotes

Footnote 1:Counsel for M.R. attached an incorrect copy of the Order of Fact-Finding and Disposition to the moving papers. The Court finds this error to be de minimis and proceeds on the motion as it relates to the September 15, 2023 Order relating to M.R..

Footnote 2:The Court further notes that movant could not have requested a suspended judgment at any point while the child was in foster care as Family Court Act § 1052 (a) prohibits the Court from issuing a suspended judgment if the child is placed under Family Court Act § 1055. While M.R. could have requested that the Court modify the Order of Disposition to a release of the child to her care during the trial discharge period so that she could have sought a suspended judgment, that would have likely led to a disruptive result if granted as it would have required a change in the case planning responsibility from the foster agency to ACS at a late stage of the proceeding.

Footnote 3:The parties appeared before the Court on April 16, 2024 for oral arguments on the motion. At the appearance, counsel for ACS usurped the time allotted for oral arguments by repeatedly and unrelentingly challenging the statutory basis for the motion and demanding a hearing on the matter if the motion was not summarily denied that day. Movant, on the other hand, acknowledged that the Court had sufficient information before it to render a decision but agreed to an evidentiary hearing if the Court found it necessary. The Court thereafter set the matter down for a hearing to take place on May 20, 2024. However, upon further review of the motion and transcript of oral arguments, the Court informed the parties that it would be deciding the motion on written submissions alone as no issues of fact had been identified by the parties that warranted a hearing under the circumstances.